JOSEPH POOL, Plaintiff, *against* STEPHEN HIGGINSON AND M. COLEMAN, TRUSTEE, Defendants.

[SPECIAL TERM.]

(Decided July 29th, 1878.)

To authorize an injunction against the creation of a noise it must not only be such a noise as produces actual physical discomfort in persons of ordinary sensibilities, but it must be a noise unreasonably made.

It appearing that the defendant, a tenant in a French flat, lulled his teething infant to sleep in a nine pound parlor baby-carriage, by rolling it up and down upon his padded carpeted floor: *held*, that the noise, if any, so produced was reasonable,

and the result of a proper use of his apartments, and that he could not be enjoined from so rolling the carriage at the suit of a tenant occupying apartments underneath.

MOTION to continue during the pendency of the action a temporary injunction which had been granted *ex parte.*

This action was brought by Pool, a tenant of apartments, against Coleman, his landlord, and Higginson, another tenant, having apartments over the plaintiff, to obtain damages for injuries alleged to have been occasioned .plaintiff and his family by the noise of the rolling of " a cart or wagon " containing Higginson's baby, and to obtain a perpetual injunction against such rolling. The motion was heard upon the complaint and affidavits.

The facts are stated in the opinion.

*Thomas F. Wentworth*, for plaintiff.

*John J. Post*, for defendant Higginson.

*A. C. Anderson*, for defendant Coleman.

VAN HOESEN, J.—The plaintiff occupies apartments on the fourth floor of No. 68 Madison Avenue, and the defendant occupies apartments on the fifth floor, directly above those of the plaintiff. The house belongs to the class of tenements called French flats. The affidavits describe the rooms of both parties as fitted up with furniture designed especially for those very rooms. Neither party could move without running the risk of getting other apartments to which the furniture might not be. suited. They both have strong reasons, therefore, for wishing to stay where they are. The defendant's family consists of himself, his wife, an infant child, two step-children, and two maid servants. The infant is about fifteen months old, and is sick with the pains of teething. For the purpose of lulling the child to sleep, the defendant has a parlor baby-carriage, a vehicle weighing about nine pounds, and having two side wheels about three inches in diameter, and a movable castor in front. The car-

riage is made to run over carpet. It is used in the night time as well as in the day time, whenever the child is fretful and needs to be soothed. There is no pretence that the defendant ever causes it to be used for any other than the proper purpose, but the plaintiff and his wife say that they are annoyed by day, and kept awake at night, by the rumbling of the carriage overhead. They describe the noise as intolerable, and Mr. and Mrs. Adams, who visit them occasionally, fully agree with them, as do the plaintiff's servants. The plaintiff has repeatedly complained of the noise, and various efforts have been made to do away with it. The carpets of the defendant's rooms were taken up, and three thicknesses of padding laid down under them. That did not mend the matter. Then india-rubber wheels were substituted for the wooden wheels of the carriage, but, though they answered the purpose, they were taken off, because they would not run over the pile of the carpet. The plaintiff then brought this action, insisting that neither he nor his wife can rest or sleep if the carriage be used. On the other hand, the defendant, or rather his wife, is positive that the baby cannot be put to sleep except in the carriage. A fact which seemed to me to be of some importance in the case is, that one night when the defendant's wife, with bare feet, was walking up and down the floor, carrying the child, the noise seemed to the plaintiff so loud and so unbearable that he knocked upon the ceiling to warn the defendant that it must cease. That fact appeared to me to show either that the plaintiff's nervous system was in a highly irritated state, or else that No. 68 Madison Avenue is built like the houses in Pentonville, described by Thackeray, " where you hear rather better outside the room than in." Of course, the plaintiff has been greatly annoyed by the noise of the carriage, and probably injunctions have been granted when the complainants have not suffered greater inconvenience than he has. But every one of these cases must stand by itself, and regard must be had to the locality, and to the nature of the use of the property which makes the noise, as well as to the effects produced thereby. The noise must be real, not a

mere annoyance to persons of fastidious tastes, but such as
would be likely to be physically annoying to a person of
ordinary sensibilities. It must not only be productive of
physical discomfort, but it must be unreasonable. The
business of a tinsmith cannot be carried on at unreasonable
hours, nor will a band of music be permitted to annoy by
playing near a dwelling-house twice a week for two or three
hours at a time. The ringing of chimes or of church bells
has been restrained by injunction. And in *Broder* v. *Saillard*
(2 Chancery Division, 692), a gentleman who had leased a
stable next to the wall of a dwelling-house was enjoined
from keeping his three horses in it, because the noise of the
horses disturbed the occupants of the adjoining house. It
was held that the keeping of horses in a place so situated
that their noise would prevent persons in the neighborhood
from sleeping was not a reasonable use of the stable property.
In determining whether the noise should be stopped by in-
junction, the test is not whether the defendant is using his
property for lawful and proper purposes, but is, whether the
use of the property is reasonable in view of the right of the
neighbors to peace and quietness. Thus, the business of a
tinsmith, the keeping of horses, the playing of music, and
the ringing of bells, are lawful and proper in themselves,
but as every man has a right to quietness and freedom from
noise in his house, it is unreasonable, in view of that right,
that those things should be done in such a way that the
neighbors will be deprived of the rest and the quietude essen-
tial to the full and free enjoyment of their property. Said
Lord Selborne in *Ball* v. *Ray* (8 Chan. App. 467): " In a case
of nuisance of this character, there are always two things to
be considered—the right of the plaintiff and the right of the
defendant. If the houses adjoining each other are so built
that it is manifest that each adjoining inhabitant was intended
to enjoy his own property for the ordinary purposes for which
it and all the different parts of it were constructed, then so
long as the house is so used there is nothing that can be re-
garded in law as a nuisance which the other party has a right
to prevent. But, on the other hand, if either party turns

his house, or any portion of it, to unusual purposes, in such a manner as to produce substantial injury to his neighbor, it appears to me that this is not, according to principle, a reasonable use of his property, and his neighbor, showing substantial injury, is entitled to protection." And in that very case Lord Justice Millish said, that certain noises, like the noise of a pianoforte in a neighbor's house, or the noise of a neighbor's children in a nursery, we must always expect, and must to a considerable extent put up with. In the city of New York, various causes have combined to bring about the crowding of numbers of people into one house. Poverty forces the poor into tenement houses, and fashion lures the well-to-do into French flats. But there can be but one law for the two classes of dwellings, or, perhaps I might say, for both varieties of that species of abode called apartment houses. The restriction of the use of a baby-carriage in a French flat would logically be followed by the prevention of the use of sewing-machines in tenement houses. · Certainly, the noise of an ordinary sewing-machine must be quite as offensive as that of a parlor carriage, and the day-laborer needs rest and sleep quite as much as the dweller in a French flat; and yet, no man would approve the enjoining of the seamstress from stealing a few hours from night for the pursuit of her trade. It is true that no laborer is likely to complain of any disturbance of his sleep, for "weariness can snore upon the flint, when restive sloth finds the down pillow hard;" but that consideration does not change the principle. Where a man makes himself one of a hundred gathered under one roof, and selects as his home a house so flimsily built that the tread of a woman's bare foot upon a heavily carpeted floor makes a vibration to be complained of by those living on the floor below, he cannot expect the immunity from noise and disturbance which he would enjoy in a house occupied by his own family alone, nor can he restrain other occupants from any use of their own apartments consistent with good neighborship, and with a reasonable regard for the comfort of others. If the rocking of a cradle, the wheeling of a carriage, the whirring of a sewing-machine, or the

discord of ill-played music, disturb the inmates of an apart-
ment house, no relief by injunction can be obtained unless
the proof be clear that the noise is unreasonable, and made
without due regard to the rights and the comfort of other
occupants.   The situation of the dwellers in apartments,
whilst it has its advantages, must be, in some respects, less
agreeable than that of those who occupy a whole house.
They cannot expect the same quiet and repose.   The man
who lives in a hotel must not be surprised if roused from
sleep by the heavy foot of some guest passing by his door at
an unseasonable hour.   Nor ought the plaintiff to have been
surprised by the use of any ordinary means which the de-
fendant might employ to lull his sick child to sleep.   No
man has a right to such immunity from noise that his neigh-
bor cannot stir in his own room.   There is nothing in the affi-
davits to lead me to the conclusion that the defendant, in
having this carriage instead of a cradle, made a use of his
apartments' which, in view of the plaintiff's right to quiet and
repose, was unreasonable.   It is probable that a cradle swing-
ing upon pivots set in stationary standards would have
answered the purpose as well as the carriage, and as it would
make no noise, good neighborship might suggest the use of
it; as matter of law, however, if the defendant himself were
taken sick, and obliged to walk the floor all night through
pain, the plaintiff would have no right to insist that he
should put on india-rubbers.   As has been said, each case
must stand by itself; and where people indulge their incli-
nation to be gregarious they must not expect the quiet that
belongs to solitude.

The injunction must be dissolved, with $10 costs to
defendant Higginson.

Motion denied and temporary injunction dissolved, with
$10 costs to defendant Higginson.